EDISON ELECTRIC LIGHT CO. v. NOVELTY INCANDESCENT LAMP CO.

(Circuit Court, W. D. Pennsylvania. May 7, 1908.)

No. 6.

PATENTS—INVENTION—INCANDESCENT LAMPS.

The Edison reissue patent No. 12,393 (original No. 444,530), for a leading-in wire for incandescent lamps, consisting of two copper wires connected by a short joint of platinum wire extending part way through the glass of the bulb, both joints between the copper and platinum being sealed in the glass, is void for lack of invention. It was previously known that such joints could be made and sealed in the glass; but it was believed that in such case the expansion of the copper would break the glass, and the discovery that such belief was erroneous was of a mechanical truth, and not an inventive act.

In Equity.   On final hearing.

. Bakewell & Byrnes, Richard N. Dyer, and John Robert Taylor, for complainant.

A. Parker-Smith, for defendant.

BUFFINGTON, Circuit Judge.   The complainant, the owner of patent No. 444,530, granted January 13, 1891, to Thomas A. Edison, for a leading-in wire for incandescent electric lamps, and of a reissue thereof, No. 12,393, dated October 10, 1905, charges the respondent with infringing its first three claims.   The patent concerns the fine platinum wires through which the electric current reaches the carbon filament inclosed in the vacuum of an ordinary incandescent bulb.   The essential to prevent destruction of the filament is a glass seal through which the platinum wires conduct the current.   Platinum, though very expensive, is the only substance thus far discovered that can be used for that purpose.   This arises from the fact that its coefficient of expansion is so close to that of glass that its expansion neither cracks the ensealing glass nor its contraction separates it therefrom.   In addition to its cost, the extension of platinum beyond the seal is open to objection.   If its size is restricted to the small cross-section, which is electrically sufficient to lead in the current, the platinum wire that extends beyond the seal to connect with the copper wires at the outer end of the seal, and that as well which leads into the vacuum to support the copper wire by which the filament is supported, are too frail.   On the other hand, if the platinum is made of large enough cross-section to obviate these mechanical objections, its size causes certain electrically objectionable results. What the device did is best stated in Mr. Edison's own note of instruction to his solicitor in preparing his specification:

"The object of this invention is to diminish the cost of incandescent lamps. The invention consists in arranging and manipulating the leading-in wires in such a way that many times less platina is required than heretofore and at the same time produces a more perfect seal and mechanical arrangement. A, A', and A, A', X, are copper wires.   A short piece of platina is fused to them.   The size of the platina is several times smaller than that used heretofore, yet abundantly sufficient to carry the usual current.   Previous to my invention the platina wires extended clean through and projected from the glass bulb outside and inside the vacuum, and the size could not be reduced beyond a certain size, owing to mechanical reasons.   The platina had to sustain and carry the filament, and the effects of vibration in shipping and jarring in factories, as well as bending and manipulating in the factory.   Therefore, previous to my present invention, the size was not limited for electrical, but mechanical, reasons.   I have found that copper, iron, nickel, silver, and other metals and their alloys, having a greater expansion than platina, can be sealed into glass, but on cooling contract sufficient to permit air to pass into the vacuum, but are yet held mechanically rigid; hence by using a short length of platina wire as a part of the seal I secure a stable vacuum, and at the same time the copper or other wires provide all the mechanical strength requisite in an incandescent lamp."

That the locating of these two copper-platina joints within the glass seal was novel and the result useful we are free to concede; but a study of the art satisfies us no invention was involved in so doing.   It was known before that a copper-platinum joint could be located in a glass seal, and the mechanical effect was known that, while the relative

coefficients of expansion of copper and glass were such that they failed to form a perfect seal for the vacuum, this copper section did form a rigid mechanical support for the filament. But it was also known that, notwithstanding this defect in the copper portion of the seal failing to seal perfectly, the platinum portion beyond the seal remained perfect. But such a joint located to connect platinum with copper leading in to the filament showed the possibility of making such a joint, and obviously there was no reason why such joint could not be made with a copper wire leading outwardly from the other end of the platinum. Such outward-extending copper wire was not exposed to heat induction, as was its fellow at the other end, and there was no real reason why such a joint could not be made. Doubtless it would have been so made, save for the fact that lampmakers labored under the erroneous idea that such a copper wire thus sealed in would crack the glass and thus ruin the seal. In this they were mistaken, as Edison showed; but the recognition of this mistake was a mechanical truth, and not an inventive act.

Indeed, this case is not unlike that of Daylight Company v. American Company, 142 Fed. 459, 73 C. C. A. 570, decided in this circuit. There, although the possibility of rolling glass was known, a false notion that thin rolled glass could not be cut and annealed existed. Accordingly there was no attempt to roll prismatic glass. When this mistake in regard to cutting and annealing was exploded, the rolling of prismatic glass was claimed as an inventive act. It was there said:

"This assumption by the glass manufacturers that sheets could not be cut and that it would be impossible to anneal them was quite natural, in view of their experience with molded glass, and they had every ground to reason by analogy from that assumption it was no use to roll large sheets, when they had to make the molded tiles thick and small in order to anneal them, and that they could not be satisfactorily cut. Now the rolling of glass has shown this assumption was wholly wrong; that rolled glass can, when made thin, be successfully moved to the leers and can be annealed in large sheets; and that, in cutting, it acts differently from molded tiles. But these facts do not impart inventive qualities to the making of a machine to roll such glass. That there were mechanical difficulties to be overcome in successfully rolling prism glass goes without saying. * * * But to our minds all these steps, important as they were to the art, were mechanical, and not inventive, in their nature."

So, also, here we are of opinion that the new location of the Edison joint, while ingenious, useful, and practical, was but a mechanical improvement. He did not discover a copper-platinum joint could be made in a seal without destroying its integrity, but by correcting a false notion as to the effect of such a seal at its other end he broadened the sphere of use of such seal. It was one of those mechanical advances which the increased cost of platinum and closer study of manufacturing problems naturally brought about.

We accordingly hold this patent void, and a decree dismissing the bill may be submitted.